# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **Amon-Ra E. Dobbins** | **Case No.:** |
| **Plaintiff,** vs. | **Judge:** |
| **Groveport Madison Local School District, by and through the Groveport Madison Board of Education** <br> 4400 Marketing Place, Suite B <br> Groveport, Ohio 43125 <br><br> and <br><br> **Garilee Ogden** <br> **(in her official and individual capacity)** <br> 4400 Marketing Place, Suite B <br> Groveport, Ohio 43125 <br><br> **Defendants.** | **Complaint** <br><br> **JURY DEMAND ENDORSED HEREON** |

Plaintiff Amon-Ra E. Dobbins (hereinafter referred to as either "Plaintiff" or "Mr. Dobbins"), by and through counsel, states the following as his Complaint against Defendants Garilee Ogden and the Groveport Madison Local School District, by and through the Groveport Madison Board of Education:

## JURISDICTION

1. This action is authorized and instituted pursuant to (a) Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000-d, et seq. for damages and injunctive relief; (b) the Civil Rights Act of 1966, as amended by the Civil Rights Act of 1991, codified at 42 U.S.C. § 1981, and (c) the laws of the State of Ohio.

2. The unlawful discrimination and employment practices alleged below were and are now being committed within the State of Ohio and the Southern District, Eastern Division of this Federal Court.

## PARTIES

3. Plaintiff, Amon-Ra Dobbins, is an African-American male who is a resident of Fairfield County, Ohio. Mr. Dobbins formerly was employed as an Assistant Principal with the Groveport Madison Local School District.

4. Defendant Groveport Madison Local School District, by and through its Board of Directors ("the District" or "Groveport Madison") is a public school district located in Groveport, Franklin County, Ohio which receives federal financial assistance.

5. Defendant, Garilee Ogden, is the Superintendent of the District, and she is sued in her official and individual capacity.

## FACTUAL BACKGROUND

6. Plaintiff incorporates the preceding Paragraphs, as if fully rewritten herein.

7. Groveport Madison Local School District is located in Groveport, Ohio. According to its 2018 Annual Report, the District enrolls over 6,000 students and employs 675 staff members and administrators.

8. Of the 6,000 students in the District, 43% of them are African-American while only 4% of African-Americans account for the reported staff members and administrators.

9. Plaintiff joined the District in 2002 as a guidance counselor and an English/Language Arts teacher. Through his years of commitment, Plaintiff was promoted to School Improvement Coordinator at the middle school in 2015.

10. In May 2017, the District awarded Mr. Dobbins a two-year administrative contract as an Assistant Principal and he worked in that capacity at the Groveport Madison High School during the 2017-2018 school year and the beginning of the 2018-2019 school year.

11. At the time he received his non-renewal from the District in 2019, Plaintiff was one of a few African-Americans in administration within the District and the only African-American administrator at the high school.

12. As an administrator, Plaintiff exemplified competency in his new role as an administrator. From 2015- 2018, Plaintiff rated "Skilled" on his performance reviews, and in particular he rated "Above" average when evaluating his "Student Growth Measure of Effectiveness."

13. In June of 2018, ABC 6 News released an article noting that African-American students were disciplined at an alarmingly higher rate than other non-minority students in the Groveport Madison school district. The articled noted that, "[f]rom the 2016/2017 school year, data shows 561 black students in Groveport Madison served an out-of-school suspension as opposed to 166 white students who received the same punishment. Nearly 6,000 students are enrolled in the Groveport Madison School District. The district lists 45 percent of its students are white and 41% are black." (CITE: https://abc6onyourside.com/news/local/3x-more-black-students-serve-suspensions-than-whites-in-some-local-school-districts)

14. Defendant Odgen was well-aware of the criticisms her school district was facing in the Summer of 2018. In a July 19, 2018 article, she is quoted as stating, "[w]e are working as a team to address the situation. No matter the demographic of a child, we take discipline seriously." The article goes on the mention that "Ogden also scheduled diversity training

for all instructors in August, before the first day of school." (CITE: https://abc6onyourside.com/news/local/scoring-our-schools-superintendent-responds-to-investigation-on-racial-disparity).

15. As the administrator charged with processing student discipline at the beginning of the 2018-19 school year, Mr. Dobbins was also well-aware of the ABC 6 article and the complaints of African-American students that they were disciplined at a rate higher than other non-minority students.

16. Early in the 2018-19 school year, the District decided to begin enforcing and disciplining students regarding some aspects of its Dress Code Policy. In particular, students would no longer be able to wear du-rags on their head when arriving to school in the morning.

17. While the du-rag is not a religious head covering, it is a cultural one. It preserves the brushing of black or African hair. Through consistent wearing, the du-rag gives the effect of "waves" and the hair creates a radial effect from the top of the crown to the hairline. Du-rags are also worn by those with long hair when wearing braids, as it keeps the hair from frizzing up for a period of time.

18. Du-rags are used to protect black or African hair, which is often fragile and susceptible to becoming very dry and brittle. The du-rag represents a form of honor and pride in one's appearance, and it serves a functional purpose for maintaining traditional black/African hairstyles.

19. Du-rags were originally worn by enslaved African American women and laborers in the 19th century. In the 1930s, during the Harlem Renaissance and Great Depression, the du-rag was used to maintain hairstyles. After the Black Power Movement in the late 1960s,

the du-rag also became a fashion statement among African-Americans, worn by rappers, athletes, and men of all ages.

20. Plaintiff was concerned with the potential racial bias of the District's policy to only enforce the du-rag portion of its school dress policy, while ignoring other violations.

21. On September 21, 2018, Plaintiff sent an email to the other administrators raising concerns with Defendants for enforcing parts of the dress code that primarily affected African-American students.

22. In the email, Mr. Dobbins noted that the school's policy prohibited spandex, hoodies, and body-piercings, but these articles of clothing and accessories were worn by both faculty and students without intervention by administration. The purpose of the email was to point out that cultural traditions that were mainly partaken by African-Americans were discouraged, while other violations of the dress code were ignored when carried out by non-minorities.

23. The September 21, 2018 email was addressed at the Building Leadership Team (BLT) meeting held on September 25, 2018. In the meeting, those in attendance, including building Principal Singh, Mr. Lomonico, Mr. Jagger and Dr. Blubaugh, agreed that the students were specifically prohibited from wearing clothing that revealed their stomach and cleavage. The body also agreed that head coverings were not of concern, so long as their faces were visible. On September 26, and with the support of those present at the BLT meeting, Mr. Dobbins emailed faculty, staff and students the dress code enforcement.

24. Soon after the email was sent out, Defendant Ogden visited the school and recognized African-American males wearing du-rags. Without considering and acknowledging

differences in cultural preferences and clothing choices, Defendant Ogden then directed the staff to forbid African-American males from wearing any head coverings and to discipline them for doing so.

25. On October 13, 2018, and two weeks after the dress code email, Defendant Ogden emailed the District board members. Ms. Ogden falsely claimed that Mr. Dobbins' dress code email was done without anyone's knowledge and that he caused confusion. Further, Ms. Ogden's email placed Mr. Dobbins' name in bold to emphasize his independent decision on sending the dress code email.

26. Ms. Ogden personally attacked Mr. Dobbins and tarnished his name and reputation to the other board members.

27. On October 18, 2018, Plaintiff Dobbins was provided a Letter of Reprimand regarding the dress code email.

28. Plaintiff believed that the Letter of Reprimand was excessive punishment and that he was not being treated fairly by Ms. Ogden primarily because he had opposed the District's discriminatory treatment of African-American students and had publicly voiced his concerns.

29. On October 19, 2018, Plaintiff filed a timely Charge of Discrimination dually with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC").

30. In response to the Letter of Reprimand, Plaintiff also provided a rebuttal letter to the District on October 23, 2018 with a list of counter-arguments to their alleged reasons for his Letter of Reprimand and Plaintiff noted that he felt he was being harassed and treated unfairly by Defendant Ogden.

31. Instead of adequately responding to Mr. Dobbins' letter and legitimate explanations, the District continued to punish Mr. Dobbins. On November 20, 2018, Plaintiff was placed on a Professional Improvement Plan ("PIP").

32. On November 27, 2018, the high school principal, Dr. Signh, told Plaintiff that he had been instructed, presumably by Defendant Odgen, to give Mr. Dobbins three additional "write-ups" for alleged school policy violations.

33. On February 4, 2019, Plaintiff received his Final Evaluation, which rated him as Ineffective or Developing, the lowest rating he has ever received in the sixteen (16) years he had worked in the District.

34. Mr. Dobbins was placed on administrative leave.  Mr. Dobbins' position was filled by a Caucasian male.

35. At its March 13, 2019 Board meeting, the District voted not to renew Plaintiff's administrator contract and his employment with the District was set to end on July 31, 2019.

36. After an investigation, the EEOC issued a determination letter regarding Mr. Dobbins' charge on November 18, 2019. The EEOC noted that:

> The investigation reveals Charging Party had fourteen years of excellent service and promotions and **only after he raised race-based concerns did Respondent allege performance issues and terminate him.** The investigation shows Charging Party was terminated for his race and for protesting what he perceived as the Respondent's discriminatory treatment. **Therefore, I find there is reasonable cause to believe that Charging Party was discriminated against due to his race, Black, and in retaliation for having engaged in protected activity in violation of Title VII.**[1]

---

[1] The Department of Justice continues to investigate Plaintiff's Title VII claims and may be filing a Complaint directly against the District.

(Emphasis added).

## COUNT I

### Race Discrimination in Violation of Title VI of the Civil Rights Act of 1964

37. Plaintiff incorporates the preceding Paragraphs, as if fully rewritten herein.

38. At all times herein relevant, Plaintiff was a member of a class protected from discrimination. Plaintiff is African-American.

39. The District, by its final decision maker Defendant Ogden, engaged in intentional race discrimination by subjecting Plaintiff to changes in the department policies and review standards that had an adverse effect on Plaintiff, criticizing Plaintiff's work performance and placing him on an improvement plan, terminating Plaintiff's employment, and otherwise discriminating against Plaintiff in the terms, privileges, and conditions of employment.

40. During Plaintiff's employment, similarly situated non-protected employees were treated more favorably than Plaintiff.

41. Defendants' discriminatory conduct, in violation of Title VI, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

42. Defendants' actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

## COUNT II

### Retaliation in Violation of Title VI of the Civil Rights Act of 1964

43. Plaintiff incorporates the preceding Paragraphs, as if fully rewritten herein.

44. Plaintiff engaged in a protected activity by, *inter alia,* opposing the discriminatory treatment. He internally opposed the discriminatory du-rag policy, and in response to that opposition he was punished and disciplined. When he opposed the continued discriminatory treatment through a charge of discrimination with the EEOC, he was more severely punished and subsequently terminated.

45. The Defendants intentionally retaliated against Plaintiff for engaging in one or more protected activities by subjecting Plaintiff to changes in the department policies that had an adverse effect on Plaintiff, terminating Plaintiff's employment, criticizing Plaintiff's work performance, placing him on an improvement plan, and otherwise discriminating against Plaintiff in the terms, privileges, and conditions of employment.

46. Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages and punitive damages (where allowed) and all other relief available under this section.

47. At all times herein relevant, Defendants acted in conscious and/or reckless disregard for Plaintiff's rights, with great probability that their acts and omissions would cause substantial harm to Plaintiff.

48. As the direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, included but not limited to serious emotional distress and loss of salary, benefits, and other terms, privileges and conditions of employment for which the Defendant is liable.

## COUNT III

**Race Discrimination/Retaliation in Violation of 42 U.S.C. §1981 through 42 U.S.C. §1983**

49. Plaintiff incorporates the preceding Paragraphs, as if fully rewritten herein.

50. This count is against Defendant Ogden.

51. Plaintiff is an African-American man who, as detailed in the factual allegations, was dismissed from employment because of his complaints of race discrimination.

52. Under the Fourteenth Amendment, Plaintiff had the right as a public-school employee to Equal Protection of Laws.

53. Defendant Ogden subjected Plaintiff to violations of his right to Equal Protection by: subjecting Plaintiff to changes in the department policies that had an adverse effect on Plaintiff, criticizing Plaintiff's work performance and placing him on an improvement plan, attacking Plaintiff for his complaints of racial discrimination, tarnishing Plaintiff's reputation and convincing the Board to not renew his contract, terminating Plaintiff's employment, retaliating against him for filing a complaint of discrimination, and otherwise discriminating against Plaintiff in the terms, privileges, and conditions of employment.

54. Because of the statutorily impermissible and willful, if not malicious, acts of defendant Ogden, Plaintiff has suffered and will continue to suffer economic and non-economic damages, included but not limited to serious emotional distress and loss of salary, benefits, and other terms, privileges and conditions of employment for which the Defendants are liable.

## COUNT IV

### Race Discrimination/Retaliation in Violation of O.R.C. §4112.99

55. Plaintiff incorporates the preceding Paragraphs, as if fully rewritten herein.

56. The Defendants discriminated against Plaintiff because of his race by subjecting Plaintiff to changes in department policies and standards that had an adverse effect on Plaintiff,

criticizing Plaintiff's work performance and placing him on an improvement plan, terminating Plaintiff's employment, retaliating against him for reporting such discrimination, and otherwise discriminating against Plaintiff in the terms, privileges, and conditions of employment in violation of §4112.02 of the Ohio Revised Code.

57. Defendants' violations of §4112.02 of the Ohio Revised Code are violations of §4112.99 of the Ohio Revised Code.

58. Defendants' conduct was willful, wanton, reckless, and/or malicious for which Defendants are liable for compensatory damages and punitive damages and all other relief available under this section.

59. As the direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, included but not limited to serious emotional distress and loss of salary, benefits, and other terms, privileges and conditions of employment for which the Defendants are liable.

**WHEREFORE**, Plaintiff demands that:

1. That the Court declare that Defendant the Groveport Local School District and Defendant Ogden knowingly, willfully, deliberately, intentionally and maliciously violated Plaintiff's rights under Title VI of the Civil Right Act of 1964, 42 U.S.C. § 1981 through 42 U.S.C. § 1983, and O.R.C. Section 4112.02(I) in their criticism of Plaintiff's work performance, negative evaluations of Plaintiff, placement of Plaintiff on an improvement plan, and discharge of Plaintiff in retaliation for his complaints of discrimination and his opposition to unlawful acts or practices.

2. That the Court order Defendant to reinstate Plaintiff to his former employment with full back pay, pre- and post-judgment interest, seniority, and fringe benefits from the date of

his illegal termination to the date he is restored to his employment; or, in the alternative, that the Court award Plaintiff full back pay, pre- and post-judgment interest, front pay, and all fringe benefits from the date of his illegal termination to the date of his re-employment in a position of equal or similar status;

3. That the Court award Plaintiff such other and further relief as the Court deems just and proper, including compensatory damages, punitive damages, court costs, and attorney's fees.

Respectfully submitted,

**/s/ Chanda L. Brown**
Chanda L. Brown (0081076)
Sean L. Walton (0088401)
WALTON + BROWN, LLP
395 East Broad Street, Suite 200
Columbus, Ohio 43215
Telephone:    (614) 636-3476
Facsimile:    (614) 636-3453
Email: cbrown@waltonbrownlaw.com
             swalton@waltonbrownlaw.com
*Attorneys for Plaintiff Amon-Ra Dobbins*

## JURY DEMAND

Plaintiff hereby requests a jury to hear all issues so triable.

**/s/ Chanda L. Brown**
Chanda L. Brown (0081076)